IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LISA WASHINGTON,

        Plaintiff,

  v.

LOWE'S HIW INC., ET AL.,

        Defendants.

_____/

No. 3:14-cv-02984-CRB

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant Lowe's HIW, Inc. ("Lowe's") moves for summary judgment on all ten of Plaintiff Lisa Washington's claims.  Washington, a former part-time employee of Lowe's home improvement store in Fremont, brought suit for age and sex discrimination under Title VII, sexual harassment, retaliation, equal pay violations, hostile work environment, breach of the implied covenant of good faith and fair dealing, wrongful termination, and claims under the civil RICO statutes for mail fraud and conspiracy.  See First Amended Complaint (dkt. 11) (FAC).  Upon previous motion by the individual defendants in this case, we dismissed Washington's complaint without leave to amend as to those defendants.  See Order (dkt. 52). The Lowe's corporation did not move to dismiss at that time and now moves for summary judgment.  See Motion (dkt. 86).  The Court GRANTS summary judgment in favor of Lowe's with respect to all claims because Washington has failed to raise any triable issues.

United States District Court
For the Northern District of California

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Terms of Washington's Employment

Washington applied for and accepted a part-time weekend customer service associate position with the Lowe's Fremont store on December 1, 2011.  Burns Decl. Ex. B(3) (dkt. 86-5) at 6 (Offer Letter).[1]  At or around the time she was hired, Washington signed documents regarding (a) the terms of her employment, see id. at 6, 43, 53–54; (b) Lowe's policies regarding the at-will nature of her employment, id. at 44; (c) Lowe's equal employment opportunity policies, id. at 45–46; and (d) Lowe's policies against harassment, retaliation, and reporting procedures, id. at 47–52.  See also Washington Deposition at 77:22–78:21, 81:4–84:15, 91:5–20; Hernandez Decl. (dkt. 86-6) ¶ 3.

Washington was forty-four years old when she accepted her position with Lowe's.  See Washington Deposition at 76:20–77:1.  Her starting wage was $14.90 per hour, and she was informed that the normal starting wage for the position was $11.25 per hour.  Id. at 66:20–67:12, 80:4–23.

Lowe's has a program called STAR/CDR ("STAR Program") under which an employee can receive scheduled pay increases after reaching certain benchmarks.  Hernandez Decl. Ex. C.  However,

> if an employee is hired over the maximum of their pay grade, they are not considered eligible for the STAR program.  Employees above the maximum rate of their grade will not be eligible for an increase, as these employees are already paid above market rate for their grade and position.

Id. Ex. D.  Washington signed a document acknowledging that Lowe's had sole discretion to change its policies regarding payment and benefits.  See Washington Deposition Exs. at 43.  Pay raises under the STAR Program are discretionary.  Hernandez Decl. ¶ 15.

---

[1] Burns' declaration includes three exhibits.  The first two contain relevant excerpts from Washington's deposition, and the third contains the related deposition exhibits.  Those portions are referred to as the "Washington Deposition."  References to exhibits are made to the page number of dkt. 86-5 (Burns Decl. Ex. B(3)), e.g. "Washington Deposition Exs. at p. #."

**United States District Court**
For the Northern District of California

**B.    Washington's Wage Increase Request**

Around March 2012, after Washington had worked for 90 days, she began a chain of email correspondence with Lowe's Human Resources Manager Raynetta Hart requesting a scheduled pay increase under the STAR Program.  See Washington Deposition at 105:17–106:24.  The following is a brief synopsis:

| | |
|---|---|
| Sept. 10, 2012 | Email from Raynetta Hart to Washington: "Yes. I should be able to process a pay increase for you . . . .  I will try to catch up with Jason today as he needs to provide his approval." FAC at 35. |
| Sept. 28, 2012 | Washington email to Hart: "I am writing you regarding my 90 day star increase.  On Sept. 15 you stated that you fax [sic] the approval paper to Jason. . . .  Jason gave it back to [Rena Galinba] unsigned and said some thing.  You stated that Jeff had said something that was not very positive, and he would investigate it . . . .  I fill [sic] like I am being retaliated and discriminate[d] against because I as[ked] for my 90 day [i]ncrease.  Others have receive[d] there's [sic].  I know how Jeff Reynold and Jason McNutt fill [sic] about people of color and women.  Id. |

The matter was elevated to Lynette Kondra, the Area Human Resources Manager.  See Washington Deposition at 154:24–155:19, 156:12–158:20.  The record contains a number of emails between Kondra and Washington:

| | |
|---|---|
| Sept. 28, 2012 | Email from Kondra to Washington: "Although compensation was contacted, there were other factors that I personally need to review such as your Personnel file, offer letter and new hire paperwork and a few other things. There is conflicting information that [I] am sorting out . . . .  I am concerned about your comment of retaliation and discrimination . . . .  These are very serious claims of discrimination . . . and aren't taken lightly. FAC at 36. |
| Oct. 1, 2012 | Email from Kondra to Washington: "Your offer letter states WE team with a . . . starting pay of $14.90.  When researching your job code (SH0011-SCA), $14.90 is above the maximum pay rate of $13.35 . . . which is extremely higher than the maximum for this position . . . .  A pay increase is not permitted when an associates [sic] pay is above the allotted maximum. . . .  [Y]ou were given incorrect information. . . .  [I] apologize for any information given to you in error by Raynetta Hart . . . ." Washington Deposition Exs. at 57. |
| Oct. 8, 2012 | Email from Washington to Andrea Morganelli: "I have yet to receive the back pay and 90 day raise which I am entitled to based on Lowe's Policy . . . . [the explanation I received from Kondra] directly contradicts the email I received from Raynetta. . . .  I personally feel that the biases that exist are a direct result of racial profiling." FAC at 38. |

3

Washington disagreed with the Lowe's human resources department's interpretation of the STAR Program policies, but she admits that she has no personal knowledge that anyone directed Kondra to deny her a pay increase.  <u>See</u> Washington Deposition at 181:3–182:17.

### C.      Washington's Harassment Allegations

Washington alleges she "was subjected on a daily basis to rude and hostile treatment." FAC ¶ 14.  She alleges several instances of misconduct by a litany of Lowe's employees—these instances variously involve other employees following her, dancing suggestively and asking if the dancing constituted harassment, failing to respond to her requests for assistance, making comments about physical appearance, making sexually suggestive comments, taking issue with Washington leaving through a certain exit and taking her work apron home with her, making threatening gestures at Washington, and third party vendors acting inappropriately.  <u>See</u> Burns Decl. Exs. B(1) and (2); <u>see also</u> Mot. at 5–6 (summarizing alleged misconduct).  Washington sent emails and letters outlining these incidents to store management, Lowe's human resources department, and Lowe's CEO Robert Niblock.  The following is a short synopsis:

| | |
|---|---|
| Sept. 30, 2012 | Email from Washington to Niblock: "I fill [sic] that I am being discriminated and retaliated against . . . .  With out the retaliation that has been going on because I as[ked] for my pay increase." FAC at 37. |
| Dec. 17, 2012 | Email from Washington to HR Manager James Pruitt: "I fill [sic] that the environment I am working in is very hostile.  There has been a pattern of offensive conduct.  The conduct is unwelcome.  I also fill [sic] other have joined in perpetrating the harassment.  I suspect Jason store Manager and ASM [Ed] have been ring [sic] to firer [sic] me." <u>Id.</u> at 41. |
| Jun. 22 or 26, 2013 | Email from Washington to Kondra: "Ever since I filed an EEOC complaint against Lowes [sic] 1985, I have been harassed and retaliated against . . . .  I have had it with the harassment and the hostile work environment that the above group has created.  Will you please inform Jason and the above employee[s] they came [sic] be named in a law suite right along with Lowes.  I will be contacting FPD to file a police report and get a restraining order." <u>Id.</u> at 43. |

United States District Court
For the Northern District of California

4

| | |
|---|---|
| July 12, 2013 | Email from Washington to Store Manager McNutt: "You stated that Chris was retaliating against me due to Brian, there [sic] are friends. . . . We talked about Indigo and how Lowe's made her feel when she was sexual[ly] harassed.  I was hoping that the harassment would stop, but I see everything we talk about you to [sic] share with others."  Id. at 42. |
| July 12, 2013 | Email from Kondra to Washington: "I have requested information from Jason so that the ER dept can investigate your concerns."  Id. |
| Undated | Letter from Washington to Robert Niblock: "I have been retaliated against by management and others that it is rising [sic] to the level of criminal. . . .  I fill [sic] this problem come from [sic] the top.  We all have the right to be a [racist], but when you inflect [sic] your [racist] acts on others you have the problem. . . . Diane Smith . . . creates an intimidating atmosphere."  Id. at 44. |

Washington repeatedly cites these emails as evidence that she was harassed—in fact, these emails represent the primary evidence offered to oppose the motion here.[2]

### D.    Washington's Termination

Washington received warnings about carrying her backpack on the sales floor on April 11, 2014 and April 18, 2014.  Washington Deposition at 330:8–336:2; Washington Deposition Exs. at 60–64.  Store Manager Oliveira instructed Washington that she was required to put her bag in an employee locker.  Washington Deposition at 332:23–333:6. Washington disregarded those instructions, stating that it was not Lowe's policy and that she refused to use the lockers because someone had broken into her locker.  Id. at 331:3–12; Washington Decl. ¶ 46.  Following a third offense, Washington was terminated on May 2, 2014.  Washington Deposition Exs. at 64.

### E.    Procedural History

Washington filed this action against Lowe's and a number of its individual employees,

---

[2]  Washington also makes bare allegations that Lowe's CEO, Lowe's store management, Alameda County Court officials, Washington's ex-husband and his attorney, and others conspired against her to either obtain some court papers or interfere with her separate ongoing family court issues. See, e.g., FAC ¶¶ 95–100; Opp'n (dkt. 88) at 4–8; Washington Decl. (dkt. 90) ¶¶ 25–37.  Although she makes these statements in her sworn declaration, and although the Court must view this evidence in the light most favorable to Washington here, they are conclusory, subjective, and (in some cases) offer evidence not supported by personal knowledge.  See Gregory v. Cty. of Maui, 523 F.3d 1103, 1108 (9th Cir. 2008) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

United States District Court
For the Northern District of California

managers, and executives ("Individual Defendants") in June 2014.  See Complaint (dkt. 1).

Washington amended her complaint and filed her FAC on August 13, 2014.  See FAC (dkt.

11).  Defendants Rena Love Galinba and Robert Niblock filed individual motions to dismiss,

see Motions (dkts. 26 and 27), and Lowe's filed a separate motion to dismiss the FAC on

behalf of the remaining Individual Defendants, but not on behalf of the Lowe's corporation.

See Lowe's MTD (dkt. 20).  The Court dismissed all claims as to the Individual Defendants,

noting that many claims were "barely intelligible and conclusory."  See Order (dkt. 52) at 13.

In January 2015, Washington filed a notice of appeal to the Ninth Circuit on the

Court's decisions.  See Notice (dkt. 54).  The Ninth Circuit dismissed the appeal for lack of

jurisdiction because this Court had not issued a final appealable order on all claims.  Lowe's

is the last remaining defendant here given that it did not file a motion to dismiss.

## II.      LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. Proc. 56(a).  A principal purpose of summary judgment "is to isolate

and dispose of factually unsupported claims."  Celotex Corp. v. Catrett, 477 U.S. 317,

323–24 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict" for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To determine whether a genuine dispute as to any material fact exists, a court must

view the evidence in the light most favorable to the non-moving party.  Id. at 255.  If the

evidence presented is "merely colorable" and not "significantly probative," a court may

decide the legal issue and grant summary judgment.  Id. at 249–50 (citations omitted).

"Conclusory allegations . . . without factual support, are insufficient to defeat summary

judgment."  Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 515, 533 (9th Cir. 1997).

"'When opposing parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not adopt that version of

the facts for purposes of ruling on a motion for summary judgment.'"  Gregory, 523 F.3d at

1108 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

1    In determining whether to grant or deny summary judgment, it is not a court's task "to

2   scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275,

3   1279 (9th Cir. 1996) (internal citation omitted).  Rather, a court is entitled to rely on the

4   nonmoving party to "identify with reasonable particularity the evidence that precludes

5   summary judgment."  See id.

6   **III.   DISCUSSION**

7    Washington brings ten claims against Lowe's.  The Court will first discuss certain

8   underlying evidentiary issues and will then address each claim in turn.  Some claims are

9   grouped because they call for similar analysis under the same test.

10   **A.   Admissibility of Washington's Evidence Opposing Summary Judgment**

11    The evidence that Washington offers in opposition to summary judgment requires

12   individualized attention at the outset.  The bulk of the evidence on which Washington relies

13   in an attempt to establish disputes of fact are emails that she herself sent to Lowe's

14   management and Human Resources.  See generally Opp'n (dkt. 88); Washington Decl. (dkt.

15   90).  Washington's contentions in her Opposition are alternatively supported by these emails,

16   see, e.g., Opp'n at 10, or by conclusory statements offered without support or personal

17   knowledge, see, e.g., Opp'n at 4 ("plaintiff was informed that there was going to be a tempt

18   [sic] on her life.").  These items are discussed in context below where relevant.

19   **1.   Washington's Separate Statement of Undisputed Facts Is Improper**

20    Washington filed a Separate Statement of Undisputed Material Facts ("Separate

21   Statement") (dkt. 89), apparently to rebut facts Lowe's offers as undisputed in its Motion.

22   See Mot. at 2–7.  While many district courts require or allow separate statements, the

23   Northern District's Local Rules explicitly require a party to set forth any factual objections or

24   responses in its brief.  See Local Rule 56-2(a); see also Local Rule 7-3(a) ("Any evidentiary

25   and procedural objections to the motion must be contained within the brief or

26   memorandum.").  Parties are required to comply with local rules relating to separate

27   statements.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995); Carmen v. S.F. Unified

28   Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001); Rutter Group Practice Guide: Federal Civil

United States District Court
For the Northern District of California

7

United States District Court
For the Northern District of California

1   Procedure Before Trial 14:102.2 (2015).  The Court therefore STRIKES Washington's

2   Separate Statement in its entirety, including the objections contained therein and the exhibits

3   attached thereto.  The Court notes, however, that many of those exhibits are attached to other

4   documents in the record, and the Court considers that evidence where appropriate.

5   **2.   Washington's Evidence Contains Inadmissable Hearsay**

6         A trial court may only consider admissible evidence in ruling on a summary judgment

7   motion.  See Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181

8   (9th Cir. 1988).  Rule 56 requires that affidavits or declarations used to support or oppose a

9   motion be (1) made on personal knowledge and (2) set out facts that would be admissible in

10  evidence.  See Fed. R. Civ. P. 56(c)(4).[3]

11        Hearsay is a "statement, other than one made by the declarant while testifying at a trial

12  or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Ev. 801(c).

13  "[H]earsay evidence in rule 56 affidavits is entitled to no weight."  Scosche Indus., Inc. v.

14  Visor Gear Inc., 121 F.3d 675, 681 (9th Cir. 1997).  Hearsay evidence thus may not be

15  considered on summary judgment if it does not fall under a hearsay exception.  See Orr v.

16  Bank of America, 285 F.3d 764, 778 (9th Cir. 2002).  In considering a motion for summary

17  judgment, a court does not focus on the admissibility of the evidence's form, but instead

18  focuses on the admissibility of its contents.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th

19  Cir. 2003).  In this case, at least some of the evidence Washington relies on is hearsay and

20  hearsay within hearsay.  See, e.g., Washington Decl. ¶¶ 7, 9, 13, 21–26.  The Court addresses

21  that evidence below as necessary.

22

23

24

25

26  _____

27        [3]  Although Rule 56 also allows parties to support their assertions by "citing to particular parts
    of materials in the record, including depositions," see Fed. R. Civ. P. 56(c)(1)(A), the Ninth Circuit has
    held that "[l]ike affidavits, deposition testimony that is not based on personal knowledge and is hearsay
28  is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary
    judgment."  See Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1091 (9th Cir. 1990)).

**B.     McDonnell Douglas Claims (First, Fourth, and Sixth) Fail**

Washington brings claims for discrimination based on age and sex under the ADEA, Title VII, and the California Fair Employment and Housing Act (FEHA), and also for retaliation. See generally FAC.  For the following reasons, the Court GRANTS summary judgment on Claims One (sex discrimination), Four (Retaliation), and Six (age discrimination).[4]

**1.     Washington's First Claim for Sex Discrimination Fails**

Washington argues that she did not receive a STAR ninety-day pay increase and was ultimately terminated because of her sex.  She alleges that this constitutes discrimination under Title VII and California's FEHA.  FAC ¶¶ 20–28.

Courts often combine Title VII, ADEA and FEHA claims for analysis because the burdens of proof and persuasion—here, the McDonnel Douglas framework—are the same. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994); City of Moorpark v. Super. Ct., 18 Cal. 4th 1143, 1161 (1998); Dep't of Fair Emp't and Housing v. Lucent Techs., 642 F.3d 728, 748–49 (9th Cir. 2011).  To make out a prima facie case on her employment discrimination claims, Washington must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between her protected activity and the adverse action.  See, e.g., Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  "If a plaintiff has asserted a prima facie [case], the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision," and if "the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."  Id. at 1464–65; see also Wallis, 26 F.3d at 889.  To make such a showing, a plaintiff must offer

---

[4]  Washington also alleges violations under the Fair Employment and Housing Act (FEHA). Cal. Gov. Code § 12950.  To the extent Washington appears to allege claims for sex discrimination under FEHA, Washington likewise fails to carry her burden on summary judgment.  Washington failed to exhaust the requisite administrative remedies by filing a timely charge of discrimination.  Cal. Gov. Code § 12960–12965.  Washington's employment with Lowe's was terminated on or about May 23, 2014.  After her termination, Washington did not file any charge of discrimination under FEHA concerning her termination. Washington's state discrimination claim therefore fails on these procedural grounds as well.

United States District Court
For the Northern District of California

1    either <u>substantial</u> evidence that the employer's proffered reasons were not reliable or <u>direct</u>

2    evidence of discrimination.  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1219 (9th Cir.

3    1998), <u>as amended</u> (Aug. 31, 1998) (emphasis added).  In those cases where direct evidence

4    is unavailable, a plaintiff "may come forward with circumstantial evidence that tends to show

5    that the employer's proffered motives were not the actual motives because they are

6    inconsistent or otherwise not believable."  <u>Id.</u> at 1222.  Such evidence of pretense must be

7    "'specific' and 'substantial'" to create a triable issue as to an employer's intended

8    discrimination.  <u>Id.</u>

9          Even if the Court assumes that Washington makes out a prima facie case based on her

10   declaration that Lowe's took discriminatory adverse action against her, Lowe's offers

11   undisputed evidence that any adverse actions it took arose from two nondiscriminatory

12   reasons—ineligibility and insubordination.  <u>See</u> Washington Deposition at 330:8–336:2;

13   Washington Deposition Exs. at 60–64.  According to the evidence Lowe's submitted,

14   Washington did not receive a pay raise because she was hired at an hourly rate well beyond

15   the eligible rate for the STAR program and she was terminated because she refused to stop

16   carrying her bag on the sales floor.  <u>See id.</u>

17         The burden thus shifts to Washington to show pretext.  A "plaintiff at the pretext stage

18   must produce evidence in addition to that which was sufficient for her prima facie case in

19   order to rebut the defendant's showing."  <u>See Godwin</u>, 150 F.3d at 1220.  If, as here, the

20   plaintiff relies on indirect and circumstantial evidence, she must provide "specific,

21   substantial evidence of pretext."  <u>See id.</u>; <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1170 (9th

22   Cir. 2007).  Washington admits that she has no personal knowledge that Reynolds instructed

23   Kondra to deny Washington a pay increase due to her age or gender.  <u>See</u> Washington

24   Deposition at 181:3–82:17.[5]  Furthermore, Washington's declaratory evidence is not based

25   on personal knowledge, cannot be submitted in an admissible form at trial, and therefore

26   _____

27         [5] Washington makes several other allegations of sexual or harassing conduct including fist pounding, coworkers ignoring her, strange people following her, coworkers commenting on her physical

28   appearance, etc.  <u>See</u> Mot. at 5–6.  Defendants argue that none of these complaints constitute adverse employment actions, but even assuming she carries her initial burden, the claim still fails as she cannot show pretext.  <u>See Godwin</u>, 150 F.3d at 1220.

**United States District Court**
For the Northern District of California

1   cannot serve as a basis for carrying her burden on summary judgment.  See Gregory, 523

2   F.3d at 1108; see, e.g., Opp'n at 12 ("Lowe's management encouraged the [sexual

3   harassment] behavior and or participated in it.").  This "evidence" is not sufficient to prove

4   pretext, and is not "specific" or "substantial" enough to cast doubt on Defendant's proffered

5   nondiscriminatory reasons.  See Godwin, 150 F.3d at 1220.

6       Thus, the Court GRANTS summary judgment on the sex discrimination claim because

7   Washington has not carried her burden to show pretext.  Washington's remaining Title VII

8   and FEHA claims fail for the same reasons.

9                **2.    Washington's Fourth Claim for Retaliation Fails**

10      Washington's retaliation claim also fails.  A prima facie case of retaliatory discharge

11  requires a showing that (1) Washington was engaged in a protected activity; (2) she was

12  thereafter subjected to an adverse employment action by her employer; and (3) a causal link

13  exists between the protected activity and the adverse employment action.  See Wallis, 26

14  F.3d 885.

15      It is unclear exactly what conduct Washington alleges caused the retaliation against

16  her by Lowe's and its employees.  She variously states that the retaliation stemmed from her

17  complaints against a number of coworkers, see FAC ¶¶ 46–48, her EEOC complaint, FAC ¶

18  49–51, and her inquiry regarding her ninety-day STAR pay increase, Opp'n at 14.  It is also

19  unclear whether the retaliatory action she disputes was her termination or the alleged

20  harassment she suffered.  Compare FAC ¶¶ 45–53 and Washington Decl. ¶¶ 14, 18, and 32

21  (alleging retaliation by harassment) to Opp'n at 2, 12 ("Plaintiff has clearly suffered a

22  retaliatory termination.").

23      Even if the Court assumes that Washington has established her prima facie

24  case—including that the conduct she faced qualifies as an adverse employment action, see

25  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)—Lowe's has produced undisputed

26  evidence of nondiscriminatory motives for her termination and denied pay increase.  See

27  Washington Deposition at 330:8–336:2; Washington Deposition Exs. at 60–64.  Once again,

28  Washington responds with inadmissible evidence not based on personal knowledge.  Id.  She

offers no "further" evidence beyond her conclusory declaration to carry her burden under McDonnell Douglas.  See Godwin, 150 F.3d at 1220; see also Unt v. Aerospace Corp., 765 F.2d 1440, 1446 (9th Cir. 1985).

Washington also refers to several exhibits in which she discusses retaliation with Lowe's employees.  See, e.g., FAC at 42 (email dated July 12, 2013 to Store Manager Jason McNutt, alleging that McNutt "stated that [an employee named] Chris was retaliating against me due to Brian, there [sic] are friends."); Id. at 43 (an undated email to Kondra stating "I have been harassed and retaliated against by Management and male employees in the store . . . ."); Id. at 44 (an undated letter to Niblock stating "I have been retaliated against by management and others that it is rising to the level of criminal.").  None of these statements are specific or substantial enough to raise an inference that Lowe's proffered reasons were a pretext for retaliation.  See Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001) (circumstantial evidence of pretext must be both "specific" and "substantial").  The Court thus concludes that Claim Four fails to raise a triable issue.

### 3.   Washington's Sixth Claim for Age Discrimination Fails at the "Prima Facie" and Pretext Stages

Washington argues that Lowe's denied her a pay increase terminated her because of her age.  FAC ¶ 59.  Specifically, she alleges that one or several of her superiors at Lowe's Fremont told her she "looked good for her age," that a younger employee received a wage increase when she did not, and other, younger employees were allowed to carry their purses in the store although she was not.  Id.

The analysis for this claim is much the same as for the sex discrimination claim discussed above.  To establish a prima facie case under the ADEA, Washington must show (1) that she was a member of a protected class; (2) that she was performing her job in a satisfactory manner; (3) that she was discharged; and (4) that she was replaced by a

1   substantially younger employee with equal or inferior qualifications.[6]  See Diaz v. Eagle

2   Produce Ltd. P'ship, 521 F.3d 1201, 1207–08 (9th Cir. 2008); Wallis, 26 F.3d at 891

3   (McDonnell Douglas applies to ADEA).

4        Washington satisfies the first element as she is a person between the ages of forty and

5   seventy, a protected class under the ADEA.  29 U.S.C. § 631(a).  The parties agree that

6   Washington did not receive a pay raise under the STAR program and that Lowe's terminated

7   Washington's employment.  FAC ¶ 16; Washington Deposition Exs. at 62.

8        But Washington does not establish her prima facie case because she offers no

9   evidence that she was performing her job in a satisfactory manner or that she was replaced by

10  a younger employee.  Washington's declaration in opposition refers to a younger male

11  employee, Stacks, but merely suggests that he was hired at the same time and received a

12  promotion during the course of his employment with Lowe's.  See Opp'n at 9; FAC ¶ 23.

13  Washington also refers to a younger employee who received a pay increase (presumably

14  Stacks), but offers no further proof that he replaced her or assumed her duties following her

15  termination.  FAC ¶ 59.  Washington further fails to point the Court to any evidence that she

16  performed her assigned tasks in a satisfactory manner, and in fact admits in her deposition

17  and Opposition that she was reprimanded at least three times for failing to comply with

18  directions from her manager(s).  See Washington Deposition at 330:8–340:12, 331:3–12,

19  332:23–333:6, 333:15–24, 335:13-336:2; Washington Deposition Exs. at 60–62; Washington

20  Decl. ¶¶ 21–22, 26.

21       Even if Washington were able to make her prima facie case, her age discrimination

22  claim fails because Lowe's carries its burden and offers the same two nondiscriminatory

23  reasons for denying Washington a raise and ultimately terminating her—namely, that she was

24  ineligible under the STAR program's standards and she was insubordinate.  See Washington

25  Deposition Exs. at 60–62; Washington Deposition 331:3–12, 332:23–333:6. 333:15–24,

26  335:13–336:2.  Washington does not counter with any additional evidence of pretext, beyond

27

28  ───────────────────
        [6] This fourth element is not always required, as in cases where the termination is a result of a
    group layoff.  See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990).

13

United States District Court
For the Northern District of California

1    that submitted to establish her prima facie case.  See Godwin, 150 F.3d at 1220; see also Unt,

2    765 F.2d at1446.

3        Washington responds that Raynetta Hart's September 10 email promised Washington

4    a ninety-day STAR pay increase, and that this was evidence of Lowe's policy.  See Opp'n at

5    9–11; FAC at 35.  Undisputed evidence shows (1) that this was not Lowe's policy under the

6    STAR Program; (2) Washington signed and understood all the relevant terms of her

7    employment and the STAR program; and (3) her denial was in line with the STAR Program's

8    guidelines.  See Washington Deposition Exs. at 43; Hernandez Decl. Exs. C, D; Hernandez

9    Decl. ¶ 15.

10       Washington further argues that Market Director Jeff Reynolds had instructed human

11   resources employee Kondra to deny Washington's request for a STAR increase.  Opp'n at

12   9–11.  Washington appears to offer the following evidence to show pretext: (1) the statement

13   that "Lowe's discriminated against plaintiff do [sic] to her sex and age," and (2) Washington

14   sent an email recounting an incident where Store Manager Jason McNutt or Rena Love

15   Galinba stated that Mr. Reynolds had said something "not very positive" in regards to the

16   STAR increase.  Washington Decl. ¶¶ 6, 9.  The first statement is conclusory and lacks

17   personal knowledge, and therefore cannot be relied upon to create a triable issue of fact.  See

18   Skillsky, 839 F.2d at 1091.  The second statement is hearsay on at least two levels, and even

19   if it could be offered in an acceptable form at trial, Washington admits that she has no

20   personal knowledge of what Mr. Reynolds said that might suggest discriminatory intent.  See

21   id.; Washington Deposition 179:14–182:17.

22       Most importantly, however, Washington's proffered "evidence" does not constitute

23   "specific, substantial evidence of pretext," so Washington's ADEA claim fails on the pretext

24   stage as well.  See Steckl, 703 F.2d at 393; see also Vasquez v. Cty. of L.A., 349 F.3d 634,

25   642 (9th Cir. 2003).  Washington's subjective belief that Jeff Reynolds or any other higher-

26   up at Lowe's offered pretextual reasons for the denial of a pay increase or termination is

27   insufficient to raise a issue of material fact.  See, e.g., Tomada v. Home Depot U.S.A., Inc.,

28   No. 13-CV-1647 YGR, 2014 WL 2538792, at *12 (N.D. Cal. June 3, 2014).

### C.     Washington's Third Claim and Eighth Claims Fail

Washington contends that the conduct of certain Lowe's employees, managers, executives, and outside vendors constituted sexual harassment (Claim Three) and created a sexually hostile work environment in violation of the FEHA and Title VII (Claim Eight). FAC ¶¶ 34–44, 65–85. Similar analysis applies to these claims under California and federal law, and both claims fail.

### 1.     Applicable California Law

To state a claim for sex harassment or hostile work environment under California law, Washington must show that "(1) she was subjected to verbal or physical contact of a sexual nature; (2) the conduct was unwelcome, and (3) the abusive conduct was sufficiently severe or pervasive so as to alter the conditions of her employment thus creating an abusive working environment." See Foster v. ScentAir Techs., Inc., No. 13-CV-05772-TEH, 2014 WL 2603995 (N.D. Cal. June 10, 2014); Miller v. Dep't of Corrections, 36 Cal. 4th 446, 462 (2005).

California law does not permit recovery "for harassment that is occasional, isolated, sporadic, or trivial; rather the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 283 (2006). And "liability for sexual harassment may not be imposed based on a single incident that does not involve egregious conduct akin to a physical assault or the threat thereof." Lyle, 38 Cal. 4th at 284. To establish liability in a FEHA hostile work environment sexual harassment case, "an employee must show [s]he was subjected to conduct that was severe enough or sufficiently pervasive to alter the conditions of h[er] employment and create a hostile or abusive work environment." Id. at 278–79. That environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. This analysis must take into account the totality of the circumstances, including the nature of the sexual acts or words (with physical touching generally considered more offensive than mere words), the frequency of the acts, the period over which the acts

occurred, and the context in which the acts occurred.  See Sheffield v. L.A. Cty. Dep't of Cos. Servs., 109 Cal. App. 4th 153, 162 (2003).

### 2.      Applicable Federal Law

A similar standard exists under federal law.  "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed."  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  To establish a hostile work environment, Washington must show that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult.'"  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  The Court considers the totality of circumstances, including frequency and severity of the discriminatory conduct, whether it is physically threatening, and whether it interferes with the employee's job performance.  Id.  Washington must show that the conduct was "both subjectively and objectively hostile," and evidence of hostility "must be considered 'from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.'"  See Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005).

### 3.      Analysis under California and Federal Law

The scattered events on which Washington bases these claims do not rise to the level of sexual harassment or hostile work environment under either the California or federal standards.  Courts have set a high bar for establishing that harassment was pervasive and negatively impacted job performance.  See, e.g., Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003); Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 643 (9th Cir. 2003); see also Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) ("Not every insult or harassing comment will constitute hostile work environment.").

Here, Washington asserts that coworkers made some sexually suggestive comments around her, commented on her appearance, and that one coworker danced in front of her and asked if he was harassing her.  See Mot. at 5 (collecting various incidents).  The Court concludes that these incidents, viewed in the light most favorable to Washington, were not

United States District Court
For the Northern District of California

sufficiently pervasive or severe to create a triable issue on Washington's claims. See Manatt, 339 F.3d at 798; Lyle, 38 Cal. at 284. Furthermore, "[b]ecause only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship." Brooks, 229 F.3d 917, 924 (9th Cir. 2000).

Washington also asserts that a manager "harassed" her by telling her not to exit the store through a certain door and not to take her apron home with her. See Mot. at 5. She also mentions incidents including management putting her on paid suspension after she sent a store-wide email regarding her STAR increase, a coworker pounding his fist at her in a threatening manner, her receipt of dirty looks, unknown people following her, and an instance where items she left for pick-up were reshelved or moved (her allegations are inconsistent on this point). Id. at 5–6. Finally, she recycles her allegations about Lowe's CEO, Alameda County family court liaison Trina Bershirer, opposing counsel, a Ms. Krystal Lopilato, Court Commissioner Boyd Hall, and her ex husband and his attorney Mary Oaklund's conspiracy to steal unidentified "proof" and legal papers from her locker. Id. at 6.

These "complaints about her working conditions range from the trivial," such as her receipt of dirty looks, "to the routine," such as the Department's denial of a pay raise for which she was ineligible or managers directing her which exit to use. See Brooks, 229 F.3d 917, 930. Washington's allegations of a conspiracy to harass her lack support; Washington has offered no evidence beyond conclusory allegations in her declaration made without personal knowledge. See Washington Decl. ¶¶ 20, 21, 25, 27–37; Skillsky, 893 F.2d at 1091. Many of her allegations do not involve sexual misconduct, but rather constitute activity that Washington found irritating. See id.

Washington has not established a triable issue of fact on whether the remaining acts were severe, frequent, or focused enough to constitute harassment sufficient to create a hostile work environment. See Foster v. ScentAir Techs., Inc., No. 13-CV-05772-TEH, 2014 WL 2603995 (N.D. Cal June 10, 2014); Miller v. Dep't of Corr., 36 Cal. 4th 446, 462 (2005).

17

The Court thus concludes that Claims Three and Eight for sexual harassment and hostile work environment fail.

**D.      Washington's Second Claim for Wrongful Termination Fails**

Washington's wrongful termination claim also fails because it relies on the same factual allegations supporting the deficient sex and age discrimination claims discussed above.  See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999); Cuevas v. SkyWest Airlines, 17 F. Supp. 3d 956, 967(N.D. Cal 2014) (granting summary judgment on wrongful termination claim because underlying statutory claim failed as a matter of law). The Court concludes that Washington's Third Second Claim fails to raise a triable issue.

**E.      Washington's Fifth Claim for Equal Pay Claim Fails**

Individuals are "similarly situated" for purposes of establishing disparate treatment discrimination when they have similar jobs and engage in similar conduct.  Vasquez, 349 F.3d at 641.  Washington alleges that she was discriminated against due to her sex given Stack's promotion and pay increase.  FAC ¶¶ 54–53.  Lowe's has offered deposition testimony that Stark was a man, was hired at the same time as Washington, but was then promoted to a full-time position in another department.  Washington Deposition 147:3–9, 144:5–146:19.  Stark is therefore not a "similarly situated coworker" for the purposes of an Equal Pay claim given that he was a full-time employee and Washington only worked as part of the weekend team.  See Vasquez, 349 F.3d at 641.

The Court concludes that Lowe's has carried its burden and offered undisputed evidence that the denial of Washington's request for a wage increase was lawful.  See Mot. at 8–9.  Lowe's hired Washington at an hourly rate of $14.90.  Id. at 66:20–67:21.  Washington was an at-will employee and she admits that no other promise altered the terms of her employment.  Id. at 80:4–23; Washington Deposition Exs. at 6.  The STAR guidelines deemed Washington ineligible for a pay increase because her hourly rate exceeded her position's maximum pay rate.  Hernandez Decl. Ex. D.  Therefore, despite any mistaken indication from Human Resources or Hart that she would get a pay increase, Washington was never eligible for the program.

United States District Court
For the Northern District of California

Washington must respond with admissible evidence that shows there is a genuine issue of material fact for trial.  See Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  She has not carried her burden to demonstrate that she was entitled to the ninety-day STAR increase, citing only an email from Raynetta Hart stating that "Yes. I should be able to process a pay increase for you. . . .  I will try to catch up with Jason today, as he needs to provide his approval signature."  FAC at 35.  Washington admits that as the review process continued, it came to Lowe's attention that Hart was incorrect.  See Washington Deposition at 181:3–182:17.  Thus, she has not created a triable issue of fact on whether she was (1) entitled to the pay increase; or (2) treated any differently from male or younger similarly situated employees.  Her Fifth Claim fails as a result.

## F.    Washington's Ninth Claims for Fraud Fails

Washington alleges that Lowe's defrauded her when Ms. Hart outlined the STAR Program during orientation and then represented to Washington by email that she would be able to process a STAR pay increase.  FAC ¶¶ 87–93; Washington Decl. at 7.  To establish a fraud claim under California law, Washington must show that (1) Lowe's made a material misrepresentation; (2) Lowe's knew the representation was false; (3) Lowe's intended in its actions to defraud Washington; (4) Lowe's justifiably relied on that misrepresentation; and (5) the plaintiff was damaged as a result.  See Small v. Fritz Cos., Inc., 30 Cal. 4th 167 (2003); see also CACI Jury Instruction 1900.

Washington had no reason to rely on Hart's representation, negating at least one of the essential elements of a fraud claim, given that Washington signed at least two documents explaining the terms of her employment and given that she admitted she received training on the STAR Program during her intake orientation.  See Washington Deposition Exs. at 6–7, 43.  Washington's Offer Letter states that her employment was at-will and that "[e]xcept as specifically set forth herein, you agree that no other promises or representations govern the terms and conditions of your employment . . . .  If you wish you accept these terms of employment, please sign a copy of this letter in the space provided."  Id. at 6–7.  The STAR Program guidelines are clear on Washington's eligibility, and Washington knew the pay rate

1    at which she was hired.  See Hernandez Decl. Ex. D.  Lowe's thus argues that her fraud and

2    contract arguments fail.

3          In response, Washington offers the following unsupported, conclusory, and sometimes

4    irrelevant allegations:

5    •   Defendant made a false promise regarding her 90 day pay increase.

6    •   The defendant [sic] representation was false.

7    •   Lowe['s] policy up until October 12, 2012 was that all hourly employees would
     receive a 90 day star review and pay increase.

8    •   [O]ther female employees relied on defendant [sic] misrepresentation.

9    •   Plaintiff . . . need[ed] the increase.

10   •   Plaintiff applied for food stamps to offset the lack of pay.

11   •   Defendant made the promises to the male employee that was hired the same
12        date plaintiff was.  The male employee received his pay increase.

13   •   Defendant fails to accept that Lowe's policy was that every hourly employee
14        would receive a review, and a pay increase.  This policy was set out in the 2011
     Star guide; plaintiff started her employment on December 7, 2011.  The 2012
15        star/cdr guide that defendant want [sic] the court to take under consideration
     did not go into effect until October 12, 2012.

16   Opp'n at 15–16.  None of these conclusory statements are supported by admissible evidence,

17   nor do they constitute "admissible evidence that shows there is a genuine issue of material

18   fact for trial."  See Nissan Fire & Marine, 210 F.3d at 1102.  Washington provides no

19   documentation beyond the emails already discussed above, and does not point to any

20   evidence in the 2011 STAR guidelines to show a dispute of material fact.  She does not rebut

21   Defendant's showing that even if the 2011 STAR guidelines had guaranteed a pay increase

22   subject only to time constraints, Lowe's still had the right to change employment terms and

23   benefits at any time.  See Washington Deposition. Exs. at 43.  This claim also fails.

24           **G.**    **Washington's Seventh Claim for Breach of the Implied Covenant of**
               **Good Faith and Fair Dealing Fails**

25         Washington's Seventh Claim alleges that Lowe's "thwarted plaintiff's reasonable

26   expectations" and right to receive the benefits of her employment, which, she argues,

27   constitutes a breach of the implicit obligation in all California contracts to deal fairly and in

28   good faith.  FAC ¶ 63.

**United States District Court**
For the Northern District of California

1    California law states that an oral agreement made subsequent to or outside an

2    integrated written employment agreement does not alter the terms of employment, and does

3    not provide the basis for a claim of fraud or good faith and fair dealing.  See Slivinsky v.

4    Watkins-Johnson Co., 221 Cal. App. 3d 799, 806–7 (1990).  In that case, the court held that

5    promises by interviewers that a hiree could expect indefinite employment with the company

6    did not alter the terms of her integrated employment agreement.  See id.  The Court

7    concludes that a mistaken stray comment from a human resources employee cannot create a

8    triable issue here.  See id.

9    It is undisputed that Washington's employment was at-will.  Washington Deposition

10   Exs. at 6, 43.  When an employment agreement expressly provides that it may be terminated

11   at will or for any reason, the covenant of good faith and fair dealing does not impose a

12   requirement for good cause to terminate.  See Rose v. Wells Fargo & Co., 902 F.2d 1417,

13   1426 (9th Cir. 1990); see also Cuevas, 17 F. Supp. 3d at 958–59.  And even assuming

14   Washington's agreement required good cause for termination, her documented, admitted

15   insubordination would satisfy that requirement.  See Washington Deposition 331:3–12,

16   332:23–333:6. 333:15–24, 335:13–336:2.

17   Washington's Seventh Claim thus fails to establish a triable issue of fact.

18   **H.    Washington's RICO, Mail Fraud, and Conspiracy Claims Fail**

19   Washington's allegations in her conspiracy and RICO claims—which reference

20   Lowe's as a civil racketeering enterprise—are barely intelligible, conclusory, and lack

21   support from any admissible evidence given, among other things, lack of personal

22   knowledge.  See Nissan Fire & Marine, 210 F.3d at 1102.  Civil RICO claims must allege

23   that a defendant, through acts that constitute a "pattern of racketeering activity," directly or

24   indirectly participated in the conduct of an "enterprise," the activities of which affect

25   interstate or foreign commerce, and that the plaintiff was injured in her business or property

26   by reason of such conduct.  See 18 U.S.C. § 1962.  Washington seems to allege a conspiracy

27   involving, at different times, counsel for Lowe's, Lowe's managers and executives, a woman

28   named Trina Bershirer, Washington's ex-husband Claiborne Sibley and his attorney Mary

United States District Court
For the Northern District of California

Oaklund, and Hernandez, among others.  She bases her allegations on "[a] pattern of acts occurred close together [where Lowe's employees] tried to get Evidence from plaintiff by tells [sic] her she had to put her back pack in the locker."  See FAC at 30.

Washington does not support these claims with anything but conclusory statements made without personal knowledge.  See Nissan Fire & Marine, 210 F.3d at 1102. Washington seems to believe that her ex-husband, his attorney, Alameda County family court officials, and Lowe's conspired to steal documents by (1) requiring her to keep those documents in her locker, and (2) directing unknown agents to follow her around the Lowe's store where she worked.  See Opp'n; FAC at 30.  The statements supporting this claim in her declaration are conclusory, are not founded on personal knowledge, and would not form the basis for admissible evidence at trial.  See Nissan Fire & Marine, 210 F.3d at 1102. Washington thus has not established a triable issue on this Claim.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Lowe's motion for summary judgment is GRANTED as to all Claims.

**IT IS SO ORDERED.**

Dated: March 4, 2016

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT
JUDGE